# EXHIBIT A

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
7500 Security Boulevard, Mail Stop S2-26-12
Baltimore, Maryland   21244-1850



*CMCS Informational Bulletin*

**DATE:**       February 17, 2023

**FROM:**       Daniel Tsai, Deputy Administrator and Director

**SUBJECT:**   Health Care-Related Taxes and Hold Harmless Arrangements Involving the
Redistribution of Medicaid Payments

**Background**

Recently, the Centers for Medicare & Medicaid Services (CMS) has been approached by several
states with questions regarding the statutory and regulatory requirements applicable to health
care-related taxes, including in connection with proposals to implement or renew Medicaid
managed care state directed payments (SDPs) under 42 C.F.R. § 438.6(c). Many of these
questions have focused on whether health care-related tax arrangements involving the
redistribution of Medicaid payments among providers subject to the tax would comply with the
statutory and regulatory prohibition on "hold harmless" arrangements—that is, arrangements in
which the "State or other unit of government imposing the tax provides (directly or indirectly)
for any payment, offset, or waiver that guarantees to hold taxpayers harmless for any portion of
the costs of the tax"—as specified in section 1903(w)(1)(A)(iii) and (w)(4) of the Social Security
Act (the Act) and implementing regulations. In response to these questions, this informational
bulletin reiterates our longstanding position on the existing federal requirements that pertain to
health-care related taxes and re-emphasizes our goal of assisting states in ensuring appropriate
sources of non-federal share financing.

CMS recognizes that health care-related taxes are a critical source of funding for many states'
Medicaid programs, including for payments to safety net providers. CMS supports states'
adoption of health care-related taxes when they are consistent with federal requirements. CMS
approves many state payment proposals annually that are supported by health care-related taxes
that appear to meet federal requirements. CMS recognizes the challenges faced by states and
health care providers in identifying sources of non-federal share financing and implementing
Medicaid payment methodologies that assure payments are consistent with federal requirements.

Medicaid statute and regulations afford states flexibility to tailor health care-related taxes within
certain parameters to meet their provider community needs and align with broader state tax
policies and priorities for their Medicaid programs. CMS remains committed to providing states
with technical assistance aiming to ensure that health care-related taxes used to finance the non-
federal share of Medicaid expenditures meet the states' policy goals and comply with federal
requirements. For example, CMS is authorized to waive the requirements that health care-related

taxes be broad-based and/or uniform, when applicable conditions are met. [1] CMS regularly works with states to approve such waivers in furtherance of state goals while complying with federal requirements.

Although the applicable statutory and regulatory provisions afford states considerable flexibility in establishing health care-related taxes, such taxes must be imposed in a manner consistent with applicable federal statutes and regulations, including that they may not involve hold harmless arrangements, to avoid a reduction in the state's Medicaid expenditures eligible for federal financial participation. Occasionally, CMS encounters health care-related tax programs that appear to contain hold harmless arrangements, which contravene section 1903(w)(1)(A)(iii) and (w)(4) of the Act and 42 C.F.R. § 433.68(b)(3) and (f). Such arrangements are inconsistent with statutory and regulatory requirements and undermine the fiscal integrity of the Medicaid program. Recently, CMS has become aware of some health care-related tax programs that appear to contain a hold harmless arrangement that involves the taxpaying providers redistributing Medicaid payments after receipt to ensure that all taxpaying providers receive all or a portion of their tax costs back (typically ensuring that each taxpaying provider receives at least its total tax amount back).

In this informational bulletin, CMS is reiterating the federal requirements concerning hold harmless arrangements with respect to health care-related taxes. Further, states and providers should be transparent regarding any explicit or implicit agreements in place or under development to ensure that all health care-related taxes meet federal requirements to avoid a statutorily required reduction in the state's Medicaid expenditures otherwise eligible for federal financial participation. CMS recommends that states that have questions or concerns about the permissibility of a health care-related tax raise these concerns to CMS early in the process of developing the state's tax program to avoid issues surrounding the permissibility of the non-federal share of Medicaid expenditures. CMS also intends to work with states that may have existing questionable arrangements to ensure compliance with federal statutory and regulatory requirements.

**Health Care-Related Taxes and Hold Harmless Arrangements**

During standard oversight activities and the review of state payment proposals, particularly managed care SDPs and fee-for-service payment state plan amendments (SPAs), CMS is increasingly encountering health care-related tax programs that appear to contain hold harmless arrangements involving the redistribution of Medicaid payments. In these arrangements, a state or other unit of government imposes a health-care related tax, then uses the tax revenue to support the non-federal share of Medicaid payments back to the class of providers subject to the

---

[1] For non-broad based and/or non-uniform health care related taxes, these conditions are: that the tax be imposed on a permissible class or class, that the tax be generally redistributive, that the tax be not directly correlated with Medicaid payments, and that the tax lack a hold harmless arrangement. See section 1903 (w)(3)(E)(ii) for the requirement that the tax demonstrate that it is 'generally redistributive" and "not directly correlated with Medicaid payments." For the statistical test demonstrating that the tax is "generally redistributive" see 42 CFR § 433.68 (e)(1) for waivers of the broad based requirement only and 42 C.F.R. § 433.68 (e)(2) for waivers of the uniformity requirement whether or not the tax is broad-based. See section 1903 (w)(4) and implementing regulations at 42 C.F.R. § 433.68 (f) for the hold harmless requirements. See section 1903 (w)(7) and 42 C.F.R. § 433.56 for a list of permissible classes upon which states may impose health care-related taxes.

tax. The taxpayers appear to have entered into oral or written agreements (meaning explicit or implicit meeting of the minds, regardless of the formality or informality of any such agreement) to redirect or redistribute the Medicaid payments to ensure that all taxpayers receive all or a portion of their tax back, when considering each provider's retained portion of any original Medicaid payment (either directly from the state or from the state through a managed care plan[2]) and any redistribution payment received by the provider from another taxpayer or taxpayers. These redistribution payments may be made directly from one taxpaying provider to another, or the funds may be contributed first to an intermediary redistribution pool.

In these hold harmless arrangements, there appear to be agreements among providers (explicit or implicit in nature) such that providers that furnish a relatively high percentage of Medicaid-covered services redistribute a portion of their Medicaid payments to providers with relatively low (or no) Medicaid service percentage. The redistributions occur so that taxpaying providers are held harmless for all or a portion of the health care-related tax. This may include the redistribution of Medicaid payments to providers that serve no Medicaid beneficiaries.

These tax programs appear to contain impermissible hold harmless arrangements as defined in section 1903(w)(4)(C)(i) of the Act and 42 C.F.R. § 433.68(f)(3) that require a reduction in medical assistance expenditures prior to the calculation of federal financial participation as required under section 1903(w)(1)(A) and (w)(1)(A)(iii) of the Act. Here is a detailed example of a hold harmless arrangement involving Medicaid payment redistribution:

- A state imposes a hospital tax based on the volume of inpatient hospital services provided. The tax is broad-based, uniform, and is imposed on 10 hospitals.
- Six of the hospitals serve a high percentage of Medicaid beneficiaries, three serve a low percentage of Medicaid beneficiaries, and one hospital does not participate in Medicaid.
- The state uses the tax revenue as the source of non-federal share of Medicaid payments, which are made back to nine of the hospitals through SDPs. The tenth hospital, which does not participate in Medicaid, does not receive any SDPs directly from state-contracted managed care plans.
- Nine hospitals enter into oral or written agreements (meaning an explicit or implicit meeting of the minds, regardless of the formality or informality of any such agreement) to redirect or redistribute the Medicaid payments that the eight of the nine Medicaid-participating hospitals receive. Under this arrangement, five of the six hospitals that furnish a high percentage of Medicaid-covered services receive Medicaid payments from the managed care plans, then redistribute a portion of their Medicaid payments to the remaining four hospitals with lower Medicaid service percentages (including to the one hospital that does not participate in Medicaid). The redistribution amounts are calculated to guarantee that the nine participating hospitals, including those redistributing their own payments and those receiving the redistribution amounts, receive most, all, or more than all of their total tax cost back.
- The agreement among the taxpaying hospitals results in a reasonable expectation that the taxpaying hospitals, whether directly through their Medicaid payments or due to the

---

[2] The term managed care plan is used here and throughout this guidance to include managed care organizations (MCOs), prepaid inpatient health plans (PIHPs), and prepaid ambulatory health plans (PAHPs) as defined in 42 C.F.R. § 438.2.

availability of the redistributed payments received from five of the six high Medicaid service volume hospitals (regardless of whether the funds were first pooled and then redistributed), are held harmless for at least part of their health care-related tax costs.

- The high-percentage Medicaid hospitals are willing to participate because they still financially benefit from the tax program (even net of the redistribution payments they make to the lower Medicaid service volume hospitals), and the redistribution enables broad support for the tax program from all hospitals, ensuring constituent support for the state law authorizing the tax program.

Section 1903(w)(4) of the Act describes what constitutes a hold harmless arrangement. Specifically, section 1903(w)(4)(C)(i) provides that a hold harmless provision exists where "[t]he State or other unit of government imposing the tax provides (directly or indirectly) for any payment, offset, or waiver that guarantees to hold taxpayers harmless for any portion of the costs of the tax." Implementing regulations at 42 C.F.R. § 433.68(f)(3) specify that a hold harmless arrangement exists where "[t]he State (or other unit of government) imposing the tax provides for any direct or indirect payment, offset, or waiver such that the provision of the payment, offset, or waiver directly or indirectly guarantees to hold taxpayers harmless for all or any portion of the tax amount" (emphasis added). In the preamble to the 2008 final rule amending the above-referenced regulation, CMS wrote that "[a] direct guarantee will be found when a State payment is made available to a taxpayer or a party related to the taxpayer with the reasonable expectation that the payment would result in the taxpayer being held harmless for any part of the tax (through direct or indirect payments)."[3]

The word "indirect" in the regulation, highlighted in the excerpt above, makes clear that the state or other unit of government imposing the tax itself need not be involved in the actual redistribution of Medicaid payments for the purpose of making taxpayers whole for the arrangement to qualify as a hold harmless. It is possible for a state to indirectly provide a payment within the meaning of section 1903(w)(4)(C)(i) of the Act that guarantees to hold taxpayers harmless for any portion of the costs of the tax, if some or all of the taxpayers receive those payments at issue through an intermediary (for example, a hospital association or similar provider affiliated organization) rather than directly from the state or its contracted managed care plan. As CMS further explained in preamble to the 2008 final rule, we used the term "reasonable expectation" because "state laws were rarely overt in requiring that state payments be used to hold taxpayers harmless."[4] In the preamble, we also gave an example of state laws providing grants to nursing home residents who experienced increased charges as a result of nursing facility bed taxes; even though no state law typically required residents to use the grant funds to pay the increased nursing home fees, these direct state payments to nursing home residents indirectly held the nursing facilities harmless for their health care-related tax costs because of the reasonable expectation that their residents would use the state payments to repay the nursing facilities for all or a portion of their tax costs.[5] It remains true that hold harmless arrangements typically are not overtly established through state law but can be based instead on reasonable expectations that certain actions will take place among participating entities that will result in taxpayers being held harmless for all or a portion of their health care-related tax costs.

[3] 73 Federal Register 9685, 9694-95 (Feb. 22, 2008).
[4] 73 Federal Register 9694
[5] Id.

Accordingly, an arrangement in which providers receive Medicaid payments from the state (or from a state-contracted managed care plan), then redistribute those payments such that taxed providers are held harmless for all or any portion of their cost of the tax, would constitute a prohibited hold harmless provision under section 1903(w)(4)(C)(i) of the Act and 42 C.F.R. § 433.68(f)(3). Section 1903(w)(1)(A)(iii) of the Act and 42 C.F.R. § 433.70(b) require that CMS reduce a state's medical assistance expenditures by the amount of health care-related tax collections that include hold harmless arrangements, prior to calculating federal financial participation.

Some states have cited challenges with identifying and providing details on redistribution arrangements because they may not be parties to the redistribution agreements. A lack of transparency involving health care-related taxes and Medicaid payments may prevent both CMS and states from having information necessary to ensure sources of non-federal share meet statutory requirements. States have an obligation to ensure that the sources of non-federal share of Medicaid expenditures comport with federal statute and regulations. As a result, states should make clear to their providers that these arrangements are not permissible under federal requirements, learn the details of how health care-related taxes are collected, and take steps to curtail these practices if they exist.

As part of the agency's normal oversight activities and review of state payment proposals, CMS intends to inquire about potential redistribution arrangements and may conduct detailed financial management reviews of health care-related tax programs that appear to include redistribution arrangements or that CMS has information may include redistribution arrangements. As part of their obligation to ensure state sources of non-federal share meet federal requirements, we expect states to have detailed information available regarding their health care-related taxes. Consistent with federal requirements, CMS expects states to make available all requested documentation regarding arrangements involving possible hold harmless arrangements and the redistribution of Medicaid payments. States should work with their providers to ensure necessary information is available. Where appropriate, states should examine their provider participation agreements and managed care plan contracts to ensure that providers, as a condition of participation in Medicaid and/or of network participation for a Medicaid managed care plan, agree to provide necessary information to the state. States may consult section 1902(a)(6) of the Act, 45 C.F.R. § 75.364, 42 C.F.R. § 433.74, and 42 C.F.R. part 438 for any requirements related to CMS' authority to request records and documentation related to the Medicaid program. In particular, 42 C.F.R. § 433.74(a) requires that states, "must also provide any additional information requested by the Secretary related to any . . . taxes imposed on . . . health care providers," and the "States' reports must present a complete, accurate, and full disclosure of all of their donation and tax programs and expenditures." 42 C.F.R. § 433.74(d) specifies that a failure to comply with reporting requirements may result in a deferral or disallowance of federal financial participation. If CMS or an outside oversight agency, such as the state auditing agency or the HHS Office of Inspector General discovers the existence of impermissible financing practices related to health care-related taxes CMS will take enforcement action as necessary. CMS is available to provide technical assistance and work with states to ensure the permissibility of all of the sources of the non-federal share of Medicaid expenditures, including any health care-related taxes the state may impose.

**Conclusion**

CMS recognizes that health care-related taxes can be a permissible source of funding for the non-federal share of Medicaid expenditures. CMS is available to provide technical assistance to states, including by reviewing proposals or existing arrangements and providing feedback to develop or modify health care-related taxes to align with state policy goals and federal requirements. One key federal requirement is that a health care-related tax cannot have a hold harmless provision that guarantees to return all or a portion of the tax back to the taxpayer. Health care-related tax programs in which taxpayers enter into agreements (explicit or implicit in nature) to redistribute Medicaid payments so that taxpayers have a reasonable expectation that they will receive all or a portion of their tax cost back generally involve a hold harmless arrangement that does not comply with federal statute and regulations.

CMS will continue to approve permissible health care-related tax programs that do not contain hold harmless arrangements and meet all other applicable federal requirements. These taxes often finance critical health care programs that pay for care furnished to Medicaid beneficiaries and shore up the health care safety net in our country. As always, CMS intends to work collaboratively with states by providing technical assistance as necessary to ensure the programmatic and fiscal integrity of the Medicaid program. For questions or to request technical assistance, please contact Rory Howe at rory.howe@cms.hhs.gov.