# EXHIBIT D

**Barbara Eyman**
_____

| | |
|---|---|
| **From:** | Fan, Kristin A. (CMS/CMCS) <Kristin.Fan@cms.hhs.gov> |
| **Sent:** | Wednesday, April 10, 2019 5:24 PM |
| **To:** | Barbara Eyman |
| **Subject:** | RE: Provider tax question |

This is accurate.  I would just add that CMS reserves the right to ask these types of questions that may help inform further policy.

**From:** Barbara Eyman [mailto:beyman@eymanlaw.com]
**Sent:** Wednesday, April 10, 2019 3:39 PM
**To:** Fan, Kristin A. (CMS/CMCS) <Kristin.Fan@cms.hhs.gov>
**Subject:** FW: Provider tax question

Hi Kristin:  Resending this per your request.  Thanks again for your help.

Barbara

**From:** Barbara Eyman
**Sent:** Tuesday, March 26, 2019 3:45 PM
**To:** 'Kristin Fan (Kristin.Fan@cms.hhs.gov)' <Kristin.Fan@cms.hhs.gov>
**Subject:** Provider tax question

Hi Kristin:

This email contains my understanding of our phone conversation just now.  Can you confirm that I accurately captured our discussion?  Thank you as always.

I noted that CMS is increasingly asking states about agreements _among_ providers (not just between states/local governments and providers) in connection with your review of various non-federal share funding arrangements. I also noted that in several states or local jurisdictions where there is a provider tax, providers have entered into agreements through which they have voluntarily agreed to buffer some of the financial disruption that might occur because of a provider tax. These agreements typically do not involve the state/local government and have not been shared with the state/local government. So I asked whether these are the types of agreements CMS is looking for when asking the question about agreements among providers, or whether you are more interested in other types of provider agreements. I also asked about CMS' view of these agreements.

You indicated that those questions are intended to obtain information that CMS believes might be indicative of provider donations, such as "burden alleviation" agreements or exchanges of ownership. They are not intended to address the kind of provider tax mitigation arrangements I asked about. You also indicated that CMS is aware that there may be arrangements out there among providers that you do not particularly like, but that you do not have statutory authority to address, which would include these types of mitigation agreements.  Therefore, you do not expect states to seek information about these agreements or providers to disclose these agreements to the state/local government in connection with CMS' questions.

Did I summarize this accurately?

Thanks Kristin,
Barbara

1

Barbara Eyman
Eyman Associates, P.C.
1120 G Street NW
Suite 770
Washington, DC 20005
(202) 567-6203 phone
(202) 290-3941 fax
beyman@eymanlaw.com
https://protect2.fireeye.com/url?k=017f008e-5d2b19f2-017f31b1-0cc47adc5fa2-53c110538f4c04a5&u=http://www.eymanlaw.com/



This email and any attachments may contain information that is privileged and confidential.  If you are not the intended recipient, please delete it without disclosing its contents or further distributing it, and notify the sender as soon as possible.

| | |
|---|---|
| **From:** | Fan, Kristin A. (CMS/CMCS) |
| **To:** | Barbara Eyman |
| **Subject:** | RE: My voice mail |
| **Date:** | Friday, April 19, 2019 11:57:00 AM |

Sorry – I didn't get a chance to return the call.

[REDACTED]

On another note – I want to clarify some points regarding your previous email looking for clarification regarding agreements and tax programs. Yes – CMS has become increasingly concerned about donation arrangements, but that does not mean that we do not evaluate health care related taxes and look at underlying information.

**From:** Barbara Eyman [mailto:beyman@eymanlaw.com]
**Sent:** Thursday, April 18, 2019 11:18 PM
**To:** Fan, Kristin A. (CMS/CMCS) <Kristin.Fan@cms.hhs.gov>
**Subject:** My voice mail

Hi Kristin:

I left you a voice mail yesterday, but thought I'd follow up via email to let you know why I was calling, in case it's easier to respond by email. I am working with providers in the city of Orlando Florida, and they are working with the City of Orlando on a local provider assessment. The assessment would require a waiver of the broad based requirement, and the state (the FL Agency for Health Care Administration) just submitted a waiver request earlier this week. The hospitals are concerned, however, because the assessment is intended to fund Low Income Pool payments and those payments must be made by the end of the SFY, which is June 30. The City Council is waiting for confirmation that the waiver has been granted before it can act on the assessment resolution, but the timing is really tight. The Council meets twice per month, and the resolution must go through two readings at separate meetings. And they need to have materials assembled two weeks ahead of time. So given all of that, they are thinking that they really need to be ready to go with their resolution by May 21 (ideally May 7, but they can make May 21 work). I know that's a pretty quick turnaround for you, but I was wondering whether it is at all realistic that you would be able to complete your review in that time frame? They pass the P1/P2 test with a comfortable margin (the excluded hospital is a children's hospital with high Medicaid volume).

Feel free to call me if this is easier to discuss by phone. And FYI for the record, these clients are not the clients for whom I was reaching out to you recently with my other question regarding provider tax related agreements).

I will be on my cell tomorrow (301-9961-1626) or will be in the office next week (202-567-6203). Thanks as always.

Barbara Eyman
Eyman Associates, P.C.

1120 G Street NW
Suite 770
Washington, DC 20005

(202) 567-6203 phone
(202) 290-3941 fax
beyman@eymanlaw.com
https://protect2.fireeye.com/url?k=cc9b5475-90ce5da5-cc9b654a-0cc47a6a52de-46a5ac1abaec6a90&u=http://www.eymanlaw.com/

